# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20649

United States Court of Appeals
Fifth Circuit

**FILED**
June 16, 2015

Lyle W. Cayce
Clerk

ELECTROSTIM MEDICAL SERVICES, INCORPORATED,

> Plaintiff – Appellant,

v.

HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve
Company,

> Defendant – Appellee.

Appeals from the United States District Court
for the Southern District of Texas.
USDC No. 4:11-CV-2745

Before PRADO, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

Electrostim Medical Services, Inc. (Electrostim) appeals the district
court's dismissal of its second amended complaint. For the reasons explained
below, we affirm in part and reverse in part the district court's judgment of
dismissal, and we remand this case for further proceedings.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th Cir.
R. 47.5.4.

No. 13-20649

**I.**

Electrostim appeals from a judgment of dismissal for failure to state a claim upon which relief can be granted; therefore, "we accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010) (internal quotation marks and alterations omitted). Electrostim is a Florida medical-equipment company that provides electro-stimulating devices and related services to patients in different states. Blue Cross Blue Shield of Texas (BCBSTX) is a division of Health Care Service Corp. (HCSC) that does business in Texas. In 2007, Electrostim and BCBSTX entered into a participating-provider agreement under which BCBSTX agreed to pay Electrostim for properly submitted claims for "Covered Services rendered to Subscribers." The agreement defined "Covered Services" as "those health services specified and defined as Covered Services under the terms of a Subscriber's Health Plan." "Subscribers" included the patients to whom Electrostim supplied equipment and services and who were also beneficiaries of insurance policies administered by BCBSTX or another Blue Cross Blue Shield entity. BCBSTX terminated its provider agreement with Electrostim effective August 1, 2010. Electrostim's lawsuit concerns claims that arose both before and after the effective date of the termination.

Electrostim sued BCBSTX in state court, alleging that BCBSTX wrongfully terminated the provider agreement. Electrostim then amended its complaint to seek relief for its unpaid claims, asserting claims for: breach of the provider agreement; unjust enrichment; breach of implied contract; third-party beneficiary rights; quantum meruit; suit on account; violation of prompt-payment statutes; violation of ERISA, 29 U.S.C. § 1132(a); breach of ERISA fiduciary duty, 29 U.S.C. § 1109; and declaratory judgment. The first amended complaint did not identify the claims that BCBSTX allegedly failed to pay to

2

Electrostim.  BCBSTX removed to the U.S. District Court for the Southern District of Texas on the basis of diversity and moved for dismissal.  During that motion's pendency, BCBSTX prepared a spreadsheet of all the claims that it believed were at issue.

When Electrostim provided its own spreadsheets that did not correspond with the one provided by BCBSTX, the district court held a hearing, which took place on August 2, 2012.  The court dismissed the first amended complaint by oral pronouncement, ordering Electrostim to file a second amended complaint that clarified the source and nature of the claims and what the causes of action were.  It also ordered Electrostim to provide a complete list of the healthcare claims at issue.  The district court did not elaborate on all of the defects that it perceived in the first amended complaint, and no written dismissal order followed the oral pronouncement that the district court made at the hearing.  Rather, at the hearing, the district court focused on its perception that the complaint lacked clarity as to the causes of action and claims in dispute, and the consequent difficulty of determining preemption issues.  In fact, the district court specifically stated that Electrostim "may have a breach of contract claim."

Electrostim's second amended complaint asserted the same causes of action as the previous one and yet again did not identify the healthcare claims at issue.  At a hearing held on August 29, 2012, the district court ordered the parties to exchange additional information regarding the claims, and in particular, it ordered BCBSTX to provide specific information about the reasons for claim denials.  BCBSTX then moved to dismiss the second amended complaint for failure to state a claim.

In October 2012, BCBSTX identified approximately 8,800 claims that Electrostim had submitted during the relevant time period before termination

of the provider agreement. Of these pre-termination claims, BCBSTX had denied 2,296 without any payment:[1]

- 77 claims for patients covered by BCBSTX plans, namely:
    - 74 claims under the federal employee program for which BCBSTX served as administrator;
    - 1 claim under a Texas state government plan for which BCBSTX served as administrator;
    - 2 claims under employer-sponsored plans for which BCBSTX served as administrator; and
- 2,219 "BlueCard" claims for patients who had healthcare plans administered by Blue Cross Blue Shield entities other than BCBSTX and for which the decision to deny coverage was made by an entity other than BCBSTX.

BCBSTX also identified 273 claims that Electrostim submitted to BCBSTX for products and services rendered after termination of the provider agreement. In addition to these post-termination claims, Electrostim contended that its lawsuit also put at issue around 20,000 other post-termination claims that had been submitted to, and denied by, Blue Cross Blue Shield entities other than BCBSTX. Electrostim contended that it would have submitted these claims to BCBSTX had the provider agreement not been terminated.

At a hearing held on February 25, 2013, the district court discussed, among other things, the 20,000 post-termination claims that Electrostim had submitted to entities other than BCBSTX, advising Electrostim that either those claims would have to be submitted to BCBSTX, or Electrostim might

---

[1] Because it viewed the second amended complaint as focusing exclusively on denied claims, BCBSTX did not believe that the lawsuit put at issue any partially paid claims, but rather only those claims that had been denied outright. Indeed, during the August 29, 2012 hearing, BCBSTX acknowledged that the majority of the claims that Electrostim had submitted to BCBSTX were partially paid rather than denied outright.

wish to add the other entities as defendants. However, at a hearing held on April 23, 2013, the district court suggested that submitting the additional 20,000 post-termination claims to BCBSTX would be a waste of time because, as the parties agreed, the proper entities to review these claims were those located in the states in which the patients resided or received services, and many of Electrostim's patients resided and received services in states other than Texas. The district court did not, however, order Electrostim to refrain from submitting the additional 20,000 claims to BCBSTX. Indeed, the district court opined that Electrostim's lawsuit was not ripe as to the 20,000 additional claims because they had not been submitted to (and denied by) BCBSTX, suggesting that Electrostim might still wish to submit the 20,000 additional claims to BCBSTX so that they could be made a part of the lawsuit. Even so, Electrostim never submitted these additional claims to BCBSTX.[2]

At the April 23, 2013 hearing, the district court determined, with Electrostim's consent, that it would consider BCBSTX's spreadsheets to be incorporated in the second amended complaint for the purpose of resolving the motion to dismiss. Thereafter, the district court received supplemental briefing by both parties that focused on the two broad categories of claims at issue (pre-termination and post-termination). With the benefit of this supplemental briefing, the district court granted BCBSTX's motion to dismiss. The court concluded that each count of the complaint failed to state a plausible claim for relief, and it entered an order of dismissal with prejudice. After the

---

[2] Electrostim's asserted basis for holding BCBSTX responsible for these 20,000 additional claims was that but for the termination of the provider agreement, Electrostim would have continued submitting these claims to BCBSTX and BCBSTX would have continued forwarding them to the appropriate entities. However, as explained below, Electrostim now concedes that the termination was proper. Therefore, Electrostim no longer has any basis upon which to hold BCBSTX liable for the 20,000 additional claims.

No. 13-20649

district court denied Electrostim's motion to amend the judgment, Electrostim timely appealed.

## II.

We conduct a *de novo* review of a district court's Rule 12(b)(6) dismissal, applying the same standard that the district court used. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir. 2005). To assess a complaint's legal sufficiency under Rule 12(b)(6), we must accept all well-pleaded factual allegations and, viewing them in the light most favorable to the plaintiff, determine whether the plaintiff has stated a "plausible"—as opposed to merely "speculative" or "conceivable"—claim that he is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In so doing, we disregard a complaint's unsupported legal conclusions, for "'a formulaic recitation of the elements of a cause of action'" will not suffice to state a plausible claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, a complaint must allege "enough factual matter (taken as true) to suggest" the elements required for a claim. *Twombly*, 550 U.S. at 556.

When a complaint has properly been dismissed, the district court has discretion whether to grant leave to amend, and we will not disturb the district court's ruling unless it abused that discretion. *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 478 (5th Cir. 2013). That discretion, however, is limited because under Rule 15, the district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981); *see also id.* at 598–600 (holding that a district court erred in denying leave to amend where amendment would not be futile, the plaintiff did not unduly delay, there were not repeated failures to cure the deficiency, and no

No. 13-20649

prejudice would result to the opposing party).  Repeated failure to cure a complaint's deficiencies and futility of amendment are legitimate considerations for denying leave to amend.  *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996).

### III.

Before we discuss the claims that are at issue in this appeal, we identify those claims which are not.  In its responses to BCBSTX's motion to dismiss the second amended complaint, Electrostim abandoned its claims for declaratory judgment and breach of ERISA fiduciary duty.  In addition, in its Rule 59(e) motion to amend the judgment, Electrostim acknowledged that its breach-of-contract claim failed to the extent that it related to BCBSTX's termination of the provider agreement and refusal to review the termination, and any attempt to amend that claim as to those two theories would be futile.  Electrostim also acknowledges that before the district court, it abandoned its claim for suit on a sworn account.

Moreover, at oral argument on appeal, Electrostim expressly abandoned its quantum meruit claim.  In addition, Electrostim's initial brief fails to provide any discussion at all on its prompt payment and unjust enrichment claims.  Because its initial brief fails to develop any argument why it pleaded— or can amend its complaint to plead—the required elements for these claims, Electrostim has abandoned any challenge to the district court's dismissal of those claims.  *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (summarizing our briefing requirements for adequately raising an issue on appeal); *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 372 (5th Cir. 1998) ("Failure to provide any legal or factual analysis of an issue results in waiver."); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.").

7

No. 13-20649

What is left of the complaint, then, for purposes of this appeal, are Electrostim's claims for: (1) breach of the provider agreement by failure to pay claims for covered services; (2) third-party beneficiary rights; (3) suit on an open account; (4) breach of implied contract; and (5) violation of ERISA, 29 U.S.C. § 1132(a).

## IV.

We now examine whether the complaint stated a plausible claim for relief as to those causes of action that Electrostim has not abandoned. As the district court did, we divide our discussion of Electrostim's causes of action between the pre-termination and post-termination claims.

### A.

#### 1.

The district court noted that at a hearing, Electrostim conceded that "the vast majority of the disputed claims in this suit arose under ERISA plans." The district court concluded that to the extent Electrostim's state-law claims concerned claims governed by ERISA plans, they were preempted by ERISA and should be dismissed on that basis.[3] We agree that to the extent that the claims at issue are governed by ERISA, ERISA preempts Electrostim's state-law claims. However, we conclude that Electrostim should have been granted leave to amend, as Electrostim can re-plead its state-law claims to avoid ERISA preemption as to ERISA-governed claims that BCBSTX partially paid.

Section 502(a) of ERISA provides: "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights

---

[3] The district court also concluded that all state-law causes of action as to the 74 claims that arose under the federal employee program for which BCBSTX served as administrator were preempted by the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901–8914. Electrostim does not challenge that determination on appeal.

to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA's civil-enforcement scheme "completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004)). Whether ERISA preempts a state-law claim based on a provider agreement turns on whether the agreement "creates a legal duty independent of the ERISA plan." *Id.* at 530 (internal quotation marks omitted). In particular, "[a] claim that implicates the *rate* of payment as set out in the Provider Agreement, rather than the *right* to payment under the terms of the [ERISA] benefit plan, . . . is not preempted by ERISA." *Id.*

Electrostim argues that its state-law claims were based not only on its right to payment under the terms of patients' ERISA plans, but also on the payment rate to which Electrostim was entitled under the provider agreement. Although Electrostim presented a payment-rate argument to the district court and has therefore preserved that argument for appeal,[4] we agree with BCBSTX that Electrostim's complaint, on its face, did not seek recovery for partially paid claims, but rather sought recovery only for those claims which had been denied in whole. Nowhere does the complaint allege that BCBSTX paid claims but failed to pay the rates specified in the provider agreement. Rather, Electrostim alleged only that BCBSTX *failed to pay* claims for which Electrostim had a right to receive payment. This is exactly the type of right-

---

[4] BCBSTX argues that Electrostim never raised a payment-rate argument in the district court and that it has thus waived that issue in this appeal. *See Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal."). BCBSTX is incorrect. In its response to BCBSTX's supplemental brief supporting its motion to dismiss the second amended complaint, Electrostim contended that its lawsuit sought to recover not only for wholly denied claims, but also for partially paid claims.

No. 13-20649

to-payment claim for which ERISA preempts state-law causes of action. *See Lone Star OB/GYN*, 579 F.3d at 530–31 (ERISA completely preempts state-law right-of-payment claims that call for a determination of whether a service is covered, because patients' ERISA plans—not the provider agreement—dictate coverage).  Because Electrostim's state-law claims are premised on Electrostim's right to receive payment under the terms of patients' ERISA plans, those claims are preempted by ERISA to the extent that the disputed claims arose under ERISA plans, and the district court did not err in dismissing them to that extent and on that basis.[5]

However, there was another set of claims that were partially paid, rather than denied outright, and Electrostim can assert non-preempted state-law claims based on the rate at which these claims were paid.  At the August 29, 2012 hearing, BCBSTX acknowledged that the majority of the claims that Electrostim had submitted to BCBSTX were partially paid rather than denied outright.  In its response to BCBSTX's supplemental brief in support of the motion to dismiss, Electrostim specifically drew the district court's attention to these partially paid claims and argued that its lawsuit challenged not only the denial of claims, but also the rate at which claims were paid.  As we have explained, ERISA does not preempt state-law claims based on an allegedly improper rate of payment in violation of a provider agreement.  Therefore, Electrostim has demonstrated, both to the district court and to this court, that because Electrostim can amend its complaint to put at issue the rate at which BCBSTX paid the partially paid claims, amendment would not be futile.  In addition, because the district court did not explain in its first dismissal why

---

[5] As explained above, on appeal, Electrostim does not challenge the district court's separate conclusion that all state-law causes of action as to the 74 claims that arose under the federal employee program for which BCBSTX served as administrator were preempted by the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901–8914.

10

No. 13-20649

Electrostim's state-law claims were preempted by ERISA, Electrostim did not repeatedly fail to cure the deficiency. Therefore, we hold that the district court erred when it denied leave to amend Electrostim's state-law claims. On remand, Electrostim should be permitted to amend its state-law claims to include its non-preempted rate-of-payment theory.

**2.**

To the extent that the disputed claims did not arise under ERISA-governed plans and Electrostim's state-law claims were therefore not preempted by ERISA, the district court concluded that the state-law claims failed for additional reasons. As to the breach-of-contract claim, the district court concluded that Electrostim failed to plead facts showing that BCBSTX breached the provider agreement by failing to make payments to which Electrostim was entitled under the agreement. The complaint did, of course, allege that BCBSTX failed to pay Electrostim's "covered claims." However, according to the district court, Electrostim alleged no facts suggesting that it was entitled to payment for the claims that it submitted. As we noted earlier, the provider agreement did not obligate BCBSTX to pay all claims submitted by Electrostim for services rendered to subscribers. Rather, it required payment only of claims submitted by Electrostim for "[c]overed [s]ervices." Whether services were covered, in turn, depended upon whether the subscribers' health plans designated them as covered. Because it believed that Electrostim had failed to provide a basis for inferring that the services Electrostim had rendered were covered services, the district court concluded that Electrostim had failed to state a claim for breach of the provider agreement.

The district court should not have dismissed Electrostim's claim for breach of the provider agreement. "The essential elements of a breach of contract claim are the existence of a valid contract, performance or

tendered performance by the plaintiff, breach of the contract by the defendant, and damages sustained as a result of the breach." *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. dism'd). In its second amended complaint, Electrostim alleged the existence and validity of the provider agreement and attached a copy. Electrostim alleged that it performed under the agreement by providing its services and products to subscribers. Electrostim further alleged that BCBSTX breached a specific provision of the agreement—the provision obligating BCBSTX to pay Electrostim's claims for covered products and services. *Cf. Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (affirming dismissal of a breach-of-contract claim on the basis that the complaint did not identify the provision that the defendant allegedly breached). Electrostim also described these services and products in some detail; namely, it provided electrostimulating devices to alleviate various medical ailments. Finally, Electrostim alleged that BCBSTX's failure to pay claims—which were eventually itemized in spreadsheets—caused Electrostim to sustain damages. We conclude that these allegations are sufficiently detailed to permit "the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and, in particular, the reasonable inference that BCBSTX breached the provider agreement by failing to pay claims for covered services. Therefore, the district court erred in dismissing Electrostim's breach-of-contract claim.

**3.**

As to Electrostim's claim for third-party beneficiary rights, the district court concluded that Electrostim had failed to plead facts showing that it was a third-party beneficiary of its patients' health-insurance contracts with BCBSTX. On appeal, Electrostim argues that it properly pleaded its third-party beneficiary claim because all insurers agree that they will pay their

insureds' healthcare providers for covered products and services. Thus, Electrostim argues, it is a third-party beneficiary to the health-insurance contracts between its patients and BCBSTX. Electrostim's argument runs contrary to settled Texas law.

Texas courts have found "no support for the proposition that healthcare providers . . . are *ipso facto* third-party beneficiaries of their patients' health-insurance contracts with standing to enforce such contracts." *Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d 802, 811 n.2 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Hermann Hosp. v. Liberty Life Assurance Co. of Boston*, 696 S.W.2d 37, 41 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (hospital not a third-party beneficiary of a patient's insurance policy merely because it would be the ultimate recipient of funds). Rather, a plaintiff must allege facts showing that the contracting parties intended to make it a third-party beneficiary. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999) (a plaintiff may assert third-party beneficiary status only when the contract contains a clear indication that the parties intended to confer a direct benefit to the plaintiff); *cf. S. Coast Spine & Rehab. PA v. Brownsville Indep. Sch. Dist.*, No. 13-11-00270-CV, 2014 WL 1789546, at *4–5 (Tex. App.—Corpus Christi Apr. 30, 2014, no pet.) (although conclusory allegation that healthcare provider is a third-party beneficiary "by operation of law" is insufficient, a provider may bring suit when insurance contracts required patients to assign their rights to the provider).

In the second amended complaint, Electrostim grounded its third-party-beneficiary claim on the mere fact that it would be the ultimate recipient of funds under patients' insurance policies. This is insufficient, as a matter of Texas law, to plausibly allege that Electrostim can sue as a third-party

beneficiary of its patients' BCBSTX insurance contracts.  Thus, the district court did not err when it dismissed Electrostim's third-party beneficiary claim.

The district court's denial of leave to amend, however, was error.  In its Rule 59(e) motion before the district court and in its briefs on appeal, Electrostim argued that it can correct the deficiency in its third-party beneficiary claim by pleading that it received assignments from its patients.  "Where, as here, the plaintiff files a motion for reconsideration and requests leave to amend following a dismissal with prejudice, 'the considerations for [the] Rule 59(e) motion are governed by [Federal Rule of Civil Procedure] 15(a).'  We therefore review the district court's denial . . . for abuse of discretion, in light of the limited discretion afforded by Rule 15(a)."  *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (first two alterations in original) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)) (footnote and citations omitted).  Electrostim's receipt of assignments would provide a separate legal basis for Electrostim to sue under its patients' insurance policies with BCBSTX.  *See Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.) ("[A] party must show either privity or third-party-beneficiary status in order to have standing to sue for breach of contract.  Privity exists if the defendant was a party to an enforceable contract with either the plaintiff or someone who assigned his or her cause of action to the plaintiff." (citation omitted)); *First-Citizens Bank & Trust Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 566 (Tex. App.—Austin 2010, no pet.) ("An assignee stands in the shoes of the assignor and may assert those rights that the assignor could assert, including bringing suit.").  Therefore, because Electrostim has shown—both to the district court and to this court on appeal—that amendment would not be futile, and because Electrostim has not repeatedly failed to cure the deficiency, the district court erred when it denied Electrostim leave to amend

its third-party beneficiary claim. On remand, Electrostim should be afforded an opportunity to amend to state this claim.

**4.**

The district court also concluded that Electrostim failed to state a claim for suit on an open account. Under Texas law, "[a]n open account exists where parties have conducted past and current dealings in a financial account; it remains open as long as the parties expect to conduct future dealings in the account. . . . A suit on an open account is—among other things—one which arises out of the general course of dealing between a debtor and creditor." *Facility Ins. Corp. v. Emp'rs Ins. of Wausau*, 357 F.3d 508, 513 (5th Cir. 2004). The essential elements of a suit-on-account claim are: "(1) that there was a sale and delivery of the merchandise; (2) that . . . the prices are charged in accordance with an agreement or in the absence of an agreement, they are the usual, customary and reasonable prices for that merchandise; and (3) the amount is unpaid." *Hose Pro Connectors, Inc. v. Parker Hannifin Corp.*, 889 S.W.2d 555, 558 (Tex. App.—Houston [14th Dist.] 1994, no writ). However, a suit on an account "need not be restricted to suits involving physical items," and it may instead involve the performance of services. *Facility Ins. Corp.*, 357 F.3d at 513.

The district court concluded that Electrostim failed to allege that it provided a good or service to BCBSTX, that the parties have conducted past dealings establishing an account, and that the parties expected to conduct future dealings in that account. We do not agree. As the district court observed, the complaint describes goods and services that Electrostim provided to BCBSTX's *subscribers*, not to BCBSTX. However, the district court overlooked the complaint's allegation that this provision of covered products and services to subscribers was itself the service that Electrostim provided to BCBSTX. Moreover, Electrostim alleged that it provided this service to

15

BCBSTX on an open account, the charges were usual, customary, and reasonable, and a balance remained due on the account. Electrostim also attached to the complaint an affidavit from its Chief Executive Officer describing the alleged account. Therefore, Electrostim stated a plausible claim for suit on an open account, and the district court erred in dismissing this claim.

## 5.

The district court also dismissed Electrostim's ERISA claim. In short, the court concluded that Electrostim could not bring an action under ERISA because it failed to specify language in any ERISA plan entitling it to benefits, and it had also failed to allege any assignment of the insureds' rights under an ERISA plan. Furthermore, the district court concluded that even if Electrostim's ERISA claim did not suffer from these flaws, it still could not state a claim under ERISA against BCBSTX for the 2,219 BlueCard claims because BCBSTX did not control the administration of those claims. In other words, according to the district court, Electrostim failed to allege facts showing that BCBSTX—rather than other Blue Cross Blue Shield entities—exercised control over the BlueCard claim denials.

The district court correctly dismissed Electrostim's ERISA claim. Under ERISA, a "participant or beneficiary" in an ERISA-governed plan may sue "to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Electrostim alleged in the complaint that it "is a participant or beneficiary as defined in ERISA," but it provided no factual support for this bare legal conclusion. ERISA defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit . . . from an employee benefit plan." 29 U.S.C. § 1002(7). The complaint provided no factual allegations to support the

16

conclusion that Electrostim was a "participant."  In addition, Electrostim did not plead facts showing that it was a "beneficiary."  We have held that "ERISA does not countenance third-party beneficiary claims," and a healthcare provider cannot show that it is a "beneficiary" in an ERISA-governed plan unless it has been so-designated by the participant or the plan document itself. *Dallas Cnty. Hosp. Dist. v. Assocs.' Health & Welfare Plan*, 293 F.3d 282, 289 (5th Cir. 2002).  Electrostim did not allege this type of beneficiary designation.

Even though Electrostim did not plausibly allege that it was a plan participant or beneficiary, it could still sue to recover benefits or enforce rights if it received a valid assignment from a plan participant or beneficiary.  *See Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289–90 (5th Cir. 1988), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthCare Ins. Co.,* 698 F.3d 229, 230 (5th Cir. 2012) (en banc).  In short, although "[h]ealthcare providers may not sue in their own right to collect benefits under an ERISA plan," they "may bring ERISA suits standing in the shoes of their patients" by showing that they have received assignments of rights from their patients.  *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015).  The complaint did not, however, allege any such assignments.  Therefore, Electrostim's ERISA claim failed because Electrostim did not plausibly allege that it was a participant, beneficiary, or assignee entitled to assert a claim under 29 U.S.C. § 1132(a)(1)(B).

Moreover, the district court's denial of leave to amend was not an abuse of discretion.  Before the district court, Electrostim simply asserted, without elaboration, that it could cure any defects if its ERISA claim were deemed insufficient; it did not argue that it could amend its ERISA claim by alleging that it received assignments from its patients.  Nor did it raise that argument in its initial brief on appeal.  Instead, Electrostim waited until its reply brief

on appeal to raise this argument.  By choosing to wait until the eleventh hour to finally explain how it could cure the defect that the district court identified, Electrostim has waived its challenge to the district court's denial of leave to amend on the basis of its conclusion that amendment of the ERISA claim would be futile.  *See Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal."); *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *see also United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (leave to amend properly denied when plaintiff did not indicate "what additional facts he could plead that would correct the deficiencies in his previous complaints").[6]

### B.

We now discuss the district court's dismissal of the second amended complaint as it related to the claims that Electrostim submitted after termination of the provider agreement.  As for the state-law claims, we analyze them against the backdrop of our conclusion that for ERISA-preemption purposes, Electrostim should be permitted leave to amend its complaint to put at issue not only the claims that were denied in full, but also the claims that were partially paid.

### 1.

As an initial matter, we agree with the district court that Electrostim cannot state a claim against BCBSTX based on the claims that it never submitted to BCBSTX.  As noted above, before filing its lawsuit, Electrostim

---

[6] Because we uphold the district court's dismissal with prejudice of Electrostim's ERISA claim, we need not address Electrostim's argument that in concluding that BCBSTX was not the proper party defendant as to the BlueCard claims, the district court improperly converted the motion to dismiss into one for summary judgment.  *See* Fed. R. Civ. P. 12(d).

submitted only 273 post-termination claims to BCBSTX. Electrostim submitted approximately 20,000 more post-termination claims to other Blue Cross Blue Shield entities in an attempt to comply with a new—or, perhaps, newly enforced—Blue Cross Blue Shield national policy requiring that claims be submitted to the entity located in the state where the patient resided or the products or services were provided. These claims were denied or returned by these other entities without processing, and Electrostim did not submit them to BCBSTX before filing its lawsuit. Nevertheless, Electrostim sued only BCBSTX; it did not sue any of the other entities to which it submitted post-termination claims. Electrostim's only basis for asserting that BCBSTX is liable for failing to pay these claims is that Electrostim would have submitted them to BCBSTX had BCBSTX not terminated the provider agreement. However, because Electrostim has abandoned its claim that BCBSTX's termination breached the provider agreement, Electrostim no longer has any colorable basis on which to assert that BCBSTX is liable for the 20,000 additional post-termination claims.

Electrostim's only argument in response is that the district court ordered it not to submit the additional post-termination claims to BCBSTX. However, the record reveals that the district court did no such thing. It is true that while the district court initially advised Electrostim to submit the additional 20,000 post-termination claims to BCBSTX, it later advised that doing so would be a waste of time. Critically, though, the district court never ordered Electrostim to refrain from submitting the additional 20,000 claims to BCBSTX. Indeed, at the April 23, 2013 hearing, the district court even opined that Electrostim's lawsuit was not ripe as to the 20,000 additional claims because they had not been submitted to (and denied by) BCBSTX, suggesting that Electrostim might still wish to submit the 20,000 additional claims to BCBSTX so that they could be made a part of the lawsuit. Electrostim concedes that it never submitted

the additional claims to BCBSTX or sued the entities to which Electrostim had submitted the claims, and those claims thus cannot form the basis for Electrostim's lawsuit against BCBSTX.

**2.**

The district court correctly concluded that Electrostim's breach-of-contract claim fails as to the post-termination claims because there was no longer a contract between the parties, and amendment would be futile. However, in the second amended complaint, Electrostim also sought recovery for breach of implied contract, and it has clarified on appeal that its implied-contract claim relates only to the post-termination claims.

Under Texas law, "[t]he elements of a contract, express or implied, are identical." *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (internal quotation marks omitted). "[T]he real difference between express contracts and those implied in fact is in the character and manner of proof required to establish them." *Id.* at 476–77 (alteration in original) (internal quotation marks omitted). "[T]he elements of either type of contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Id.* at 476 (internal quotation marks omitted). To state a claim for breach of an implied contract, a plaintiff must plead the existence of a valid implied contract, performance or tendered performance by the plaintiff, breach of the implied contract by the defendant, and damages resulting from the breach. *See City of the Colony*, 272 S.W.3d at 739.

In the second amended complaint, Electrostim sought recovery for breach of implied contract to the extent that the claims it submitted "fall outside of the [provider agreement]." Electrostim alleged that all of the claims it submitted were for covered services, that BCBSTX had previously paid such

claims, and that its failure to pay the claims violated an implied contract that required BCBSTX to pay Electrostim for its covered claims. Without any elaboration, Electrostim alleged that "[t]he parties entered into an implied contract whose terms included that if [Electrostim] provided BCBSTX's insureds with covered services and products, BCBSTX would pay [Electrostim] for its [c]laims based on those covered services and products provided."

The district court concluded that Electrostim had failed to allege all the elements required for breach of an implied contract, and that its implied-contract claim "essentially duplicates the quantum meruit and unjust enrichment cause of action." We agree that dismissal of the implied-contract claim was warranted. Electrostim provided no facts to support its vague allegation that after termination of the provider agreement, the parties entered into an implied contract. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Electrostim also failed to allege facts showing that the parties had a meeting of the minds as to the essential terms of any implied contract.

The district court also correctly denied leave to amend regarding Electrostim's implied-contract claim. In its Rule 59(e) motion, Electrostim asserted, for the first time and without elaboration, that it could cure the defects that the district court identified in an amended pleading. It never explained precisely how it could allege the required elements for an implied-contract claim. Nor has it done so on appeal; it has merely repeated its hollow and unsupported contention that if given an opportunity to re-plead, it can allege the required elements. By failing to argue before the district court or this court on appeal precisely how it could successfully amend its implied-contract claim, Electrostim has waived any challenge to the district court's denial of leave to amend based on its conclusion that amendment would be

futile. *See Celanese Corp.*, 620 F.3d at 531 ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal."); *Jones*, 600 F.3d at 541 ("Arguments raised for the first time in a reply brief are generally waived."); *see also United States ex rel. Adrian*, 363 F.3d at 404 (leave to amend properly denied when plaintiff did not indicate "what additional facts he could plead that would correct the deficiencies in his previous complaints").

## 3.

For the same reasons explained in our discussion of the pre-termination claims, we hold that as to the post-termination claims, the district court correctly dismissed Electrostim's claims for third-party beneficiary rights and violation of ERISA, but it incorrectly dismissed Electrostim's claim for suit on an open account. We also hold, again for the reasons explained in our discussion of the pre-termination claims, that the district court did not err in denying leave to amend the ERISA claim, but it did err in denying leave to amend the claim for third-party beneficiary rights.

## V.

For the foregoing reasons, we AFFIRM IN PART and REVERSE IN PART the district court's judgment of dismissal, and we REMAND this case for further proceedings consistent with this opinion. The district court correctly dismissed, with prejudice, Electrostim's claims for violation of ERISA and breach of implied contract. However, Electrostim stated claims for breach of the provider agreement and suit on an open account. Moreover, on remand, Electrostim should be permitted to re-plead its third-party beneficiary claim, and it should also be permitted to re-plead its claims for breach of the provider agreement, third-party beneficiary rights, and suit on an open account to incorporate its rate-of-payment theory.