JENNIFER WALKER ELROD, Circuit Judge:
*723 A hospital in San Antonio brought various claims against insurance companies and third-party plan administrators for violations of ERISA. The district court dismissed all of the hospital's claims except for the claim for attorneys' fees. Because we hold that the hospital sufficiently pleaded its claims for ERISA plan benefits and state-law breach of contract (Claims I and V), we REVERSE the district court's judgment dismissing these claims and REMAND to the district court to consider these two claims, as well as the claim for attorneys' fees (Claim VIII). We AFFIRM the district court's judgment dismissing the hospital's ERISA claims under 29 U.S.C. § 1132(a)(3) (Claims II, III, and VII). We also AFFIRM the district court's judgment denying leave to amend the complaint out of time.
I.
In 2012, Innova Hospital San Antonio[1] (hereafter, the Hospital) sued multiple insurance *724 companies and third-party plan administrators[2] (hereafter, the Insurers) in Texas state court. The Hospital brought the lawsuit as an assignee of the insurance benefits of the patients treated at its facility. The Hospital's original complaint alleged that the Insurers either failed to pay at all under various health-insurance plans or reduced the payment significantly. One of the Insurers timely removed the case to federal court on the basis of diversity jurisdiction and federal question jurisdiction under the Employee Retirement Income Security Act of 1974 (hereafter, ERISA).
After one of the Insurers filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, the Hospital filed an amended complaint. In the amended complaint, the Hospital alleged, among other things, that: (1) it provided medical services to patients covered by benefit plans either entered into or administered by the Insurers; (2) those patients assigned their right of payment of monies under their benefit plans to the Hospital; and (3) the Insurers either failed to reimburse the Hospital for covered claims or reimbursed the Hospital at significantly below the applicable rates. However, the amended complaint did not identify specific plans or specific plan language applicable to each claim. In response, the Insurers moved to dismiss for failure to state a claim, arguing that the Hospital needed to identify the provisions in specific plan documents that the Insurers allegedly breached.
Prior to and during this time, the Hospital attempted-without success-to obtain the plan documents at issue from the Insurers. Two years before filing the lawsuit, the Hospital had sought to obtain relevant plan provisions from some of the Insurers. In 2012, after filing the lawsuit, the Hospital sent the Insurers requests for production seeking plan documents. Most of the Insurers objected to these requests and refused to produce the plan documents. The Insurers' reasons for objecting included arguments that: (1) current motions to dismiss for failure to state a claim were pending before the district court; (2) at least some of the documents were equally accessible to the Hospital; (3) the requests for production sought private information protected by HIPPA; (4) the requests were unduly burdensome; and (5) the requests sought information beyond what ERISA requires to be disclosed. A few Insurers provided plan documents, but apparently only after the case was administratively closed in early 2013.[3] In late 2013, after the parties were unable to reach a settlement, the case was reopened. The Hospital then sent renewed discovery requests seeking the plan documents at issue. Apparently before the Hospital received any such documents, the district court granted motions to dismiss and gave the Hospital about a month to amend its first amended complaint.
In response to the Hospital's discovery requests for plan documents, some of the Insurers argued that, pursuant to the order dismissing the first amended complaint, the Hospital had no pending *725 claims and therefore the Insurers were not required to respond to its discovery requests. These Insurers gave no legal reason for their refusal to produce plan documents except the dismissal order. The Hospital did not file a motion to compel or seek to obtain plan documents from patients. Instead, having been unable to obtain plan documents from the Insurers, the Hospital sent an attorney to the Department of Labor in an attempt to obtain the relevant documents. This effort proved unsuccessful. The Hospital's last effort was Internet research. This yielded two plans, which the Hospital alleged contained representative plan language. The Hospital incorporated this language into a second amended complaint.
The Hospital filed its second amended complaint against sixteen of the insurance companies and third-party plan administrators. The complaint alleged claims relating to medical services provided in 863 separate instances to individual patients with benefit plans governed by either ERISA plans or non-ERISA contracts. The complaint alleged over $58 million in damages.
Among other things, the second amended complaint alleged that: (1) the Hospital provided health care services to patients insured by the Insurers; (2) the Hospital is an out-of-network provider for the purposes of the claims here; (3) the Hospital verified coverage with the Insurers before providing services; (4) the Hospital received a valid assignment of benefits; (5) the Hospital timely submitted claims to the Insurers for payment; (6) the Insurers uniformly failed to pay the claims according to the terms of the employee welfare benefit plan documents or individual insurance policies; (7) many of the same coverage and payment provisions are used across different health plans; (8) the Insurers must pay out-of-network providers some version of the "reasonable and customary" amount or the "usual, customary, and reasonable" amount; (9) representative plan terms require reimbursement of out-of-network providers at 80% of "reasonable and customary" expenses after the deductible; and (10) the Insurers reimbursed the Hospital at an average rate of 11%. Like the two prior complaints, the second amended complaint did not include the actual plan language from any ERISA plan or non-ERISA contract at issue.
The Insurers again moved to dismiss for failure to state a claim, arguing that the second amended complaint failed the plausibility pleading standard because the terms of the various benefit plans were essential allegations not included in the complaint. A month after the amended pleading deadline for filing the second amended complaint, a few of the Insurers attached some plans and portions of plans to their renewed motions to dismiss.
The district court granted the motions to dismiss on the Hospital's claims for plan benefits under ERISA and breach of contract, reasoning that the Hospital's second amended complaint was insufficient because it did not identify the specific plan provisions at issue. In all, the district court granted the Insurers' motions to dismiss on five of the eight claims but denied the motions to dismiss on Claim IV (failure to provide information upon request), Claim VI (negligent misrepresentation), and Claim VIII (attorneys' fees).
The Hospital filed a motion for leave to amend out of time, attaching to the motion a proposed third amended complaint that-now that more Insurers had produced plan documents post-dismissal-incorporated applicable plan language and spanned 390 pages, excluding attachments. The district court denied this request. The Hospital filed voluntary motions to dismiss *726 the two claims and the part of the attorneys'-fees claim relating to Claim IV that had survived the earlier dismissal order. The district court granted this request. The Hospital then timely appealed.[4] At issue in this appeal are the following claims: Claim I: plan benefits under 29 U.S.C. § 1132(a)(1)(B) ; Claim II: failure to provide full and fair review under § 1132(a)(3) ; Claim III: violations of claims procedure under § 1132(a)(3) ; Claim V: state-law breach of contract; Claim VII: breach of fiduciary duty under § 1132(a)(3) ; and Claim VIII: attorneys' fees.[5]
II.
We review a dismissal for failure to state a claim de novo and a denial of leave to amend a complaint for abuse of discretion. Herrmann Holdings Ltd. v. Lucent Techs. Inc. , 302 F.3d 552, 557-58 (5th Cir. 2002). Under Federal Rule of Civil Procedure 8, a plaintiff must simply give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, we must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." Richardson v. Axion Logistics, L.L.C. , 780 F.3d 304, 306 (5th Cir. 2015) (quoting Bustos v. Martini Club, Inc. , 599 F.3d 458, 461 (5th Cir. 2010) ). "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " Wolcott v. Sebelius , 635 F.3d 757, 763 (5th Cir. 2011) (quoting Dorsey v. Portfolio Equities, Inc. , 540 F.3d 333, 338 (5th Cir. 2008) ).
To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; see also Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. The facts alleged must "be enough to raise a right to relief above the speculative level," but the complaint may survive a motion to dismiss even if recovery seems "very remote and unlikely." Twombly , 550 U.S. at 555-56, 127 S.Ct. 1955 (quoting Scheuer v. Rhodes , 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ). Thus, "the complaint must provide more than conclusions, but it 'need not contain detailed factual allegations.' " Turner v. Pleasant , 663 F.3d 770, 775 (5th Cir. 2011) (quoting Colony Ins. Co. v. Peachtree Const., Ltd. , 647 F.3d 248, 252 (5th Cir. 2011) ).
III.
A. ERISA Plan Benefits Under 29 U.S.C. § 1132(a)(1)(B)
Section 502(a)(1)(B) of ERISA provides: "A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to *727 future benefits under the terms of the plan ...." 29 U.S.C. § 1132(a)(1)(B) ; see also Aetna Health Inc. v. Davila , 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (stating that under § 1132(a)(1)(B), "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits").
The Hospital contends that the district court erred in dismissing its second amended complaint for failure to state a claim under § 1132(a)(1)(B). First, the Hospital argues that the district court's requirement that it plead specific plan language to survive a Rule 12(b)(6) motion to dismiss conflicts with the pleading requirements set forth in Twombly and Iqbal . According to the Hospital, the district court created a "heightened pleading standard" by requiring the Hospital to plead information that it did not have and could not access without the Insurers' cooperation. The Hospital maintains that it alleged facts sufficient to state a claim under § 1132(a)(1)(B).
Second, the Hospital argues that-even if this court adopts a rule requiring a plaintiff to allege specific plan language to state a claim under ERISA-this case should be an exception to such a rule. The Hospital asserts that it "lacked meaningful access to the plan documents" because they were in the possession and control of the Insurers, and that the Insurers failed to provide access to those plans even though the Hospital made good-faith efforts to obtain them. The Insurers do not deny that they failed to produce the plan documents at first but maintain that they did not act improperly and that the Hospital had an adequate remedy that it failed to use-namely, a motion to compel production.
The Hospital cites Braden v. Wal-Mart Stores, Inc. , 588 F.3d 585 (8th Cir. 2009), to support its argument that a rule "requiring the plaintiffs to plead plan language with specificity whether they have access to those documents or not ... is untenable." The Hospital emphasizes that it requested plan documents from the Insurers both before litigation and through repeated discovery requests, and that it "did the best [it] could" by obtaining representative plan provisions and then "alleg[ing] that these examples were consistent with the insurance industry standard for payment of out-of-network provider benefits." Noting that the Insurers did not begin producing plan documents until well after the deadline for re-pleading had passed, the Hospital argues that its proposed third amended complaint complies with the district court's requirement by incorporating hundreds of individual claims with specific plan language from the belatedly sent plan documents.
In ruling that the Hospital's second amended complaint was insufficient because it did not identify specific plan provisions, the district court acknowledged that the Fifth Circuit had not addressed the issue but that district courts had, including this particular district court. Thus, the district court relied on its own and other district court opinions in dismissing the Hospital's claims for breach of contract and ERISA plan benefits.
The district court lacked the benefit of the guidance in Electrostim Medical Services, Inc. v. Health Care Service Corp. , 614 Fed.Appx. 731 (5th Cir. 2015),[6] when it dismissed the Hospital's ERISA claim for plan benefits and breach-of-contract *728 claim.[7] In Electrostim , we reversed in part the district court's judgment that granted Blue Cross Blue Shield of Texas's motion to dismiss. 614 Fed.Appx. at 745. Regarding the plaintiff Electrostim's breach-of-contract claim, the district court concluded that Electrostim had failed to provide grounds for inferring that the medical services it provided were "covered" services under a provider agreement. Id. at 739. Only covered services would be reimbursed. Id. Determining whether services were covered depended upon whether the subscribers' health plans identified them as covered. Id. The district court determined that Electrostim's failure to provide a basis for inferring that services were covered warranted dismissal for failure to state a breach-of-contract claim. Id. We disagreed. Id. Even though Electrostim had not identified the specific subscriber health plans indicating what services were covered (and therefore what services had to be reimbursed under the provider agreement), we concluded that Electrostim's allegations were "sufficiently detailed to permit 'the reasonable inference that the defendant is liable for the misconduct alleged.' " Id. (quoting Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 ).
Moreover, in Electrostim , we declined to adopt a requirement that plaintiffs must always include specific plan language in complaints alleging improper reimbursement under ERISA. In Electrostim , the district court dismissed the plaintiff's 29 U.S.C. § 1132(a)(1)(B) claim because it "failed to specify language in any ERISA plan entitling it to benefits." Id. at 741. We determined that the ERISA claim should be dismissed because the complaint "did not plausibly allege that [Electrostim] was a participant, beneficiary, or assignee entitled to assert a claim under 29 U.S.C. § 1132(a)(1)(B)." Id. at 742.
Simply put, ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ERISA contexts when it may be extremely difficult for them to access such plan provisions.[8] See Braden , 588 F.3d at 598 ("No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail ...."); Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc. , 712 F.3d 705, 718 (2d Cir. 2013) (quoting Braden for the same proposition); Garayalde-Rijos v. Municipality of Carolina , 747 F.3d 15, 25 (1st Cir. 2014) (quoting Braden for the proposition that a "complaint should be read in its entirety and 'not parsed piece by piece to determine whether each allegation, in isolation, is plausible' "); cf. Allen v. GreatBanc Tr. Co. , 835 F.3d 670, 678 (7th Cir. 2016) (stating that "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story"). Such a recognition is consistent with the principle that "a complaint attacked *729 by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ...." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. Indeed, district courts have relied on Electrostim in expressly rejecting overly burdensome pleading requirements in ERISA contexts. See, e.g. , Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Tex. , No. 3:13-CV-2920-L, 2015 WL 4992964, at *3-4 (N.D. Tex. Aug. 21, 2015) (denying Blue Cross Blue Shield of Michigan's motion to dismiss and, in light of our analysis in Electrostim , rejecting the argument that a plaintiff must identify a specific plan term to satisfy pleading standards).
Therefore, in light of Electrostim and the reasoning of our sister circuits in analogous contexts, we hold that plaintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6). In so holding, we adhere to the Supreme Court's admonition that "[t]he plausibility standard is not akin to a 'probability requirement' ...." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). Alleging improper reimbursement based on representative plan provisions-as the Hospital did here-may be sufficient to show plausibility under Twombly and Iqbal when there are enough other factual allegations in the complaint to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See id . Of course, Rule 8 's pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79, 129 S.Ct. 1937.
Here, the Hospital's second amended complaint contains more than mere conclusions. Besides chronicling its numerous attempts to obtain plan documents, the Hospital has credibly alleged, among other things, that: (1) it provided health care services to patients insured by the Insurers; (2) the Hospital is an out-of-network provider for the purposes of the claims here; (3) the Hospital verified coverage with the Insurers before providing services; (4) the Hospital received a valid assignment of benefits; (5) the Hospital timely submitted claims to the Insurers for payment; (6) the Insurers uniformly failed to pay the claims according to the terms of the employee welfare benefit plan documents or individual insurance policies; (7) many of the same coverage and payment provisions are used across different health plans; (8) the Insurers must pay out-of-network providers some version of the "reasonable and customary" amount or the "usual, customary, and reasonable" amount; (9) representative plan terms require reimbursement of out-of-network providers at 80% of "reasonable and customary" expenses after the deductible; and (10) the Insurers reimbursed the Hospital at an average rate of 11%. These allegations, accepted as true and viewed in the light most favorable to the Hospital, are sufficient to state a claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B).
It bears emphasizing that the Hospital was unable to obtain plan documents even after good-faith efforts to do so. As discussed above, the Hospital repeatedly sought to obtain from the Insurers the plan documents at issue. The Insurers did not produce most of the relevant plan documents until the deadline to re-plead had passed-when such documents likely would be of little use.[9]
*730 Moreover, after seeking to dismiss the Hospital's claims because the complaint did not include the plan language at issue, some of these Insurers then used the dismissal order as a basis for refusing to produce plan documents during the time the district court gave the Hospital an opportunity to re-plead. As to the Insurers' suggestion that the Hospital should have requested plan documents directly from the patients, the Hospital reasonably responds that "[j]ust like employees who join ERISA-governed plans, individuals who purchase membership in non-ERISA governed group health care plans do not themselves have access to actual plan documents." At oral argument, counsel for the Insurers indicated that the Hospital probably could have sought information regarding plan provisions from plan administrators on behalf of its patients only if there was "a sufficiently written delegation of that authority from [the] patients."
On the record before us, we agree with the Hospital that it pleaded sufficient facts in its second amended complaint to survive the Insurers' motions to dismiss the claim for ERISA plan benefits. See Vila v. Inter-Am. Inv., Corp. , 570 F.3d 274, 285 (D.C. Cir. 2009) ("Viewed in their totality, and according [plaintiff] all favorable inferences, [plaintiff's] allegations 'plausibly give rise to an entitlement to relief' ...." (quoting Iqbal , 556 U.S. at 679, 129 S.Ct. 1937 ) ). Our holding underscores the principle that when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint. See Lincoln BenefitLife Co. v. AEI Life, LLC , 800 F.3d 99, 107 n.31 (3d Cir. 2015) ("Several Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession."). As the Second Circuit has stated, "[t]he Twombly plausibility standard, which applies to all civil actions, ... does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant ... or where the belief is based on factual information that makes the inference of culpability plausible ...." Arista Records, LLC v. Doe 3 , 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted).
This is not to say that plaintiffs need not exercise due diligence in pleading factual information in ERISA contexts. Nor do we hold that a plaintiff may always plead a claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B) by incorporating representative plan language into her complaint. Our holding today is no license to fish. See Barnes v. Tumlinson , 597 Fed.Appx. 798, 799 (5th Cir. 2015) (unpublished) ("Discovery is not a license for the plaintiff to 'go fishing' ....") (quoting Marshall v. Westinghouse Elec. Corp. , 576 F.2d 588, 592 (5th Cir. 1978) ) ).
However, this is not a case in which the plaintiff has ready access to plan documents and fails to identify the specific plan language at issue. "[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of [his or her]
*731 limited access to crucial information." Braden , 588 F.3d at 598 (citing Twombly and Iqbal and holding in part that the district court misapplied Rule 8 's pleading standard in dismissing plaintiff's fiduciary-duty claim under ERISA). This is because "[i]f plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." Id. The district court here erred in dismissing the Hospital's § 1132(a)(1)(B) claim for failure to plead specific plan language from plan documents that the Hospital made unsuccessful but good-faith efforts to obtain.
B. Breach of Contract
For similar reasons, the district court also erred in dismissing the Hospital's breach-of-contract claim under Rule 12(b)(6). The district court determined that "to properly plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached." The Hospital's second amended complaint states that "[w]ith regard to the claims not governed by the terms of ERISA, the conduct of [the Insurers] described herein constitutes breach of non-ERISA contracts." 2d Amend. Compl. ¶ 89. The complaint also notes that "some of the claims remain unidentifiable as ERISA or non-ERISA at this stage of the litigation." Id. ¶ 29. The district court reasoned that the Hospital's allegations do not distinguish between its 29 U.S.C. § 1132(a)(1)(B) claim and its breach-of-contract claim and therefore, in keeping with its dismissal of the ERISA claim, determined that the Hospital "failed to allege enough facts about the terms of the non-ERISA plans to raise [its] right to relief above the speculative level."
On appeal, the Hospital raises the same factual allegations in support of its breach-of-contract claim that it does in support of its § 1132(a)(1)(B) claim. The Hospital contends that it alleged sufficient facts for both claims to survive a Rule 12(b)(6) motion to dismiss-especially given the Insurers' refusal timely to produce the relevant plan documents. The Insurers respond by emphasizing that the Hospital did not request information about the contracts from its patient-assignors.
Under Texas law, "[t]he essential elements of a breach of contract claim are the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant, and damages sustained as a result of the breach." Electrostim , 614 Fed.Appx. at 739 (quoting City of the Colony v. N. Tex. Mun. Water Dist. , 272 S.W.3d 699, 739 (Tex. App.-Fort Worth 2008, pet. dism'd) ). Electrostim directly addresses pleading requirements in an ERISA case involving a non-ERISA breach-of-contract claim, and its analysis is thus particularly instructive here. See ids="8217478" index="70" url="https://cite.case.law/sw3d/272/699/#p739">id. In Electrostim , the plaintiff "alleged the existence and validity of the provider agreement and attached a copy." Id. The plaintiff alleged that Blue Cross Blue Shield of Texas breached the provision of the agreement obligating it to pay the plaintiff's claims for covered products and services. Id. In addition, the plaintiff alleged that the failure to pay these claims caused it to suffer damages. Id. As discussed above, we concluded in Electrostim that these allegations were sufficient to survive a Rule 12(b)(6) motion to dismiss. Id.
Electrostim 's analysis informs our holding here. While the plaintiff in Electrostim was able to attach to the complaint a copy of the provider agreement at issue, the plaintiff did not identify the individual subscribers'
*732 health plans showing which services were "covered" services-the only services that had to be reimbursed under the provider agreement. Id. Instead of holding that Electrostim had to allege actual plan language from each of the subscribers' health plans to show that specific services allegedly covered were in fact covered, we held that Electrostim had alleged facts sufficient to state a breach-of-contract claim. Id.
Here, the Hospital has alleged the existence of valid contracts (non-ERISA plans), performance by the Hospital, breach of the contracts by the Insurers, and damages in the form of underpayment or non-payment sustained as a result of the breach. Therefore, in light of Electrostim , the Hospital's second amended complaint adequately states a claim for breach of contract under Texas law.[10] See Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc. , No. 3:15-CV-3632-B, 2017 WL 3658841, at *10 (N.D. Tex. Aug. 24, 2017) (citing Electrostim in rejecting defendants' motion to dismiss for failure to state a claim when plaintiff alleged that contracts provided for reimbursement of medical expenses incurred by defendants at "usual, customary, and reasonable rates").
C. ERISA Claims Under 29 U.S.C. § 1132(a)(3)
1. Claims II & III
The Hospital's appeal also challenges the district court's dismissal of three claims brought under 29 U.S.C. § 1132(a)(3) : Claim II, failure to provide full and fair review; Claim III, violations of claims procedure under ERISA; and Claim VII, breach of fiduciary duty. The Hospital has forfeited Claims II and III because of inadequate briefing on appeal. See United States v. Scroggins , 599 F.3d 433, 447 (5th Cir. 2010) ("An appellant abandons all issues not raised and argued in its initial brief on appeal." (quoting Knatt v. Hosp. Serv. Dist. No. 1 , 327 Fed.Appx. 472, 483 (5th Cir. 2009) ) ). "At the very least, [pressing a claim on appeal] means clearly identifying a theory as a proposed basis for deciding the case-merely 'intimating' an argument is not the same as 'pressing' it." Id. (quoting Knatt , 327 Fed.Appx. at 483 ). The Hospital devotes only a few sentences to discussing Claims II and III in its opening brief and fails even to address the district court's stated basis for dismissing these claims. Thus, these claims are forfeited.
2. Claim VII
The Hospital also contends that the district court erred in dismissing Claim VII, which asserts a breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). The Hospital argues in its opening brief that the Supreme Court in Varity Corp. v. Howe , 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), allowed plaintiffs to sue for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) when no other appropriate equitable relief is available. In addition, the Hospital cites Hollingshead v. Aetna Health Inc. , 589 Fed.Appx. 732 (5th Cir. 2014) (unpublished); Tolson v. Avondale Industries, Inc. , 141 F.3d 604 (5th Cir. 1998) ; and *733 CIGNA Corp. v. Amara , 563 U.S. 421, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011), and argues that under Amara , a plaintiff suing a fiduciary may obtain monetary damages under § 1132(a)(3) when there are no other ERISA remedies available.
The Hospital's claim for breach of fiduciary duty fails. Under § 1132(a)(3), a civil action may be brought:
by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ....
29 U.S.C. § 1132(a)(3). In Varity , the Supreme Court determined that an ERISA plaintiff may bring a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) when no other remedy is available. 516 U.S. at 510-15, 116 S.Ct. 1065 ; see also Tolson , 141 F.3d at 610. "Money damages are ... the classic form of legal relief." Mertens v. Hewitt Assocs. , 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Thus, "[m]oney damages are not typically available in equity." Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc. , 756 F.3d 356, 363 (5th Cir. 2014). However, § 1132(a)(3)"only allows claims for the types of equitable relief typically available in equity." Id. It follows, then, that relief under § 1132(a)(3) generally is unavailable when a plaintiff may seek monetary relief under § 1132(a)(1)(B). Swenson v. United of Omaha Life Ins. Co. , 876 F.3d 809, 812 (5th Cir. 2017).
Following Supreme Court guidance, the vast majority of circuit courts have held that "if a plaintiff can pursue benefits under the plan pursuant to [ § 1132(a)(1) ], there is an adequate remedy under the plan which bars a further remedy under [ § 1132(a)(3) ]." See LaRocca v. Borden, Inc. , 276 F.3d 22, 28 (1st Cir. 2002) (collecting cases); Korotynska v. Metro. Life Ins. Co. , 474 F.3d 101, 106 (4th Cir. 2006) (stating that "the great majority of circuit courts have interpreted Varity to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)"). Simply because a plaintiff does not prevail on a § 1132(a)(1) claim does not make viable an alternative claim under § 1132(a)(3). Tolson , 141 F.3d at 610.
There is one wrinkle to note here. After the Supreme Court's decision in Amara , a "surcharge"-a type of monetary remedy against a trustee-is a potential § 1132(a)(3) remedy under our precedent. Gearlds v. Entergy Servs., Inc. , 709 F.3d 448, 452 (5th Cir. 2013) ; see also Amara , 563 U.S. at 441, 131 S.Ct. 1866 ("[T]he fact that [requiring a plan administrator to pay money owed to beneficiaries under a reformed plan] takes the form of a money payment does not remove it from the category of traditionally equitable relief."). However, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." Gearlds , 709 F.3d at 452.
In its second amended complaint, the Hospital asserts that the Insurers' alleged breach of fiduciary duty under § 1132(a)(3) entitles the Hospital to "equitable relief by way of surcharge." 2d Amend. Compl. ¶ 101. In dismissing this claim, the district court determined that the Hospital's § 1132(a)(3) claims were indistinguishable from its § 1132(a)(1) claim. The district court concluded that the § 1132(a)(3) claims were "essentially claims for benefits denied."
We agree. While the Hospital requests equitable relief in the form of a surcharge in the alternative, the essence of its complaint *734 is that the Insurers failed to reimburse the Hospital under the terms of various plans, most of which ERISA governs. Id. ¶¶ 26, 29. The Hospital has an adequate mechanism for redress under § 1132(a)(1)(B) and thus may not simultaneously plead claims under § 1132(a)(3). See Swenson , 876 F.3d at 812 (reviewing motions to dismiss and holding that "[b]ecause ERISA's civil enforcement provision provides a direct mechanism to address the injury for which [plaintiff] seeks equitable relief, she cannot assert a separate ERISA claim for breach of fiduciary duty"); Hollingshead , 589 Fed.Appx. at 737 (agreeing on review of a dismissal under Rule 12(b)(6) that plaintiff failed to state a claim under § 1132(a)(1)(B) but nevertheless holding that plaintiff could not maintain a fiduciary-duty claim under § 1132(a)(3) ).
D. Attorneys' Fees
The Hospital argues that it sufficiently pleaded both ERISA and non-ERISA claims for attorneys' fees in its second amended complaint. The Hospital also asserts, and the Insurers agree, that the district court dismissed its claim for attorneys' fees. However, while only mentioning the Hospital's ERISA-based claim for attorneys' fees, the district court determined that the Hospital sufficiently alleged a claim for penalties under 29 U.S.C. § 1132(c)(1) and therefore "decline[d] to dismiss [the Hospital's] claim for attorneys' fees." As discussed above, the district court dismissed all of the Hospital's claims except Claim IV (failure to provide information upon request) and Claim VI (negligent misrepresentation). The statutory provision referenced by the district court, § 1132(c)(1), deals with an administrator's failure to provide requested information under ERISA. See 29 U.S.C. § 1132(c)(1). The Hospital voluntarily dismissed its two remaining claims shortly after the district court's dismissal order and also moved to dismiss voluntarily the part of Claim VIII (attorneys' fees) related to the Hospital's claim for failure to provide information upon request (Claim IV). Yet it was this attorneys'-fees claim that the district court appears to have explicitly allowed. Moreover, in its order regarding the Hospital's motion for leave to amend out of time, the district court stated that it had dismissed "all but two" of the Hospital's claims in its prior dismissal order. While somewhat unclear, it appears that the Hospital's claim for attorneys' fees has been dismissed in all aspects.
Regardless, under 29 U.S.C. § 1132(g)(1), "a court 'in its discretion' may award fees and costs 'to either party,' ... as long as the fee claimant has achieved 'some degree of success on the merits.' " Hardt v. Reliance Standard Life Ins. Co. , 560 U.S. 242, 245, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (citations omitted) (first quoting § 1132(g)(1) and then quoting Ruckelshaus v. Sierra Club , 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) ). In light of our reversal of the district court's judgment as to the Hospital's claims for breach of contract and ERISA plan benefits, we remand the claim for attorneys' fees to the district court to decide after considering the merits of the other claims.
IV.
The Hospital also appeals the district court's denial of its motion to amend its second amended complaint out of time. "Rule 16(b) [of the Federal Rules of Civil Procedure] governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district *735 court's decision to grant or deny leave." S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA , 315 F.3d 533, 536 (5th Cir. 2003). In evaluating whether a district court abused its discretion by refusing to grant an untimely motion to amend pleadings, we consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) [the] potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." Id. (quoting Reliance Ins. Co. v. La. Land & Exploration Co. , 110 F.3d 253, 257 (5th Cir. 1997) ).
Here, it is undisputed that the Hospital's motion to amend its second amended complaint was filed out of time. Thus, Rule 16(b) applies, and the Hospital must show good cause to modify the scheduling order and grant leave to amend. See id. at 535-36. However, the Hospital fails to identify the relevant legal standard and instead only discusses Federal Rule of Civil Procedure 15. Even in its reply brief, the Hospital does not cite Rule 16. "To avoid waiver, a party must identify relevant legal standards and 'any relevant Fifth Circuit cases.' " JTB Tools & Oilfield Servs., L.L.C. v. United States , 831 F.3d 597, 601 (5th Cir. 2016) (quoting United States v. Skilling , 554 F.3d 529, 568 n.63 (5th Cir. 2009) ); see also United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right ...."). The Hospital fails to argue or even to identify the legal standard relevant to whether the district court abused its discretion in denying the Hospital's motion for leave to amend out of time. Therefore, the Hospital has forfeited this argument.
V.
Accordingly, we AFFIRM the district court's judgment denying the Hospital's motion to amend its second amended complaint out of time. We also AFFIRM the district court's judgment dismissing the Hospital's 29 U.S.C. § 1132(a)(3) claims. We REVERSE the district court's judgment as to the Hospital's claims for plan benefits under 29 U.S.C. § 1132(a)(1)(B) and for breach of contract and REMAND to the district court for further proceedings consistent with this opinion. On remand, the district court also should consider the Hospital's claim for attorneys' fees under 29 U.S.C. § 1132(g)(1).

Since this appeal was filed and briefed, Victory Medical Center Houston, L.P., the other hospital that was originally an appellant with Innova Hospital San Antonio, voluntarily moved to dismiss its appeal under Federal Rule of Appellate Procedure 42(b). Its appeal was dismissed pursuant to that motion.

Appellees state that they are "sixteen independent insurers and/or claims administrators, individually doing business under Blue Cross and/or Blue Shield trademarks in various territories throughout the United States."

Indeed, it appears that these documents were not provided to the Hospital until after the deadline to file the second amended complaint had passed.

This appeal was stayed for more than two years while a related bankruptcy matter initiated by the Hospital was pending.

Claim IV (failure to provide information upon request) and Claim VI (negligent misrepresentation) are not at issue in this appeal, as the Hospital voluntarily dismissed these claims.

While Electrostim is unpublished, we find it to be persuasive on the issue of whether plaintiffs must identify the specific plan provisions at issue in complaints alleging improper reimbursement under ERISA.

The district court and the Insurers relied on the district court opinion underlying Electrostim , which was on appeal at the time the briefs were filed in this case. In its brief on appeal, the Hospital sought to distinguish the district court opinion underlying Electrostim .

When asked at oral argument whether the Hospital contacted its patients to obtain copies of the plans at issue, counsel for the Hospital reasoned that "many of the patients would not have been able to produce [those documents]." Moreover, counsel stated that the Hospital could not have contacted the patients' employers under HIPPA and that even if the Hospital had requested information under ERISA section 502(c), "the defendants in this case were taking the position that we were not entitled to it because we were an assignee ...."

While the Hospital did not file a motion to compel, this perhaps unadvised choice is not dispositive. "Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests." McLeod, Alexander, Powel & Apffel, P.C. v. Quarles , 894 F.2d 1482, 1485-86 (5th Cir. 1990) (rejecting a party's contention that sanctions could not be imposed when the opposing party had not first requested an order to compel and stating that the party resisting discovery requests "must have a valid objection to each one in order to escape the production requirement").

Both the Hospital and the Insurers cite the elements for breach of contract under Texas law when discussing the Hospital's state-law breach-of-contract claim. However, the Insurers state in a footnote that it is "unclear which states' laws govern [the Hospital's] breach of contract claims." The Hospital admits that further discovery is needed to determine which of its reimbursement claims fall under ERISA and which fall under common-law breach of contract. Thus, we hold only that the Hospital's second amended complaint sufficiently states a breach-of-contract claim under Texas law.