# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 18, 2021

Lyle W. Cayce
Clerk

No. 19-10594

Clarence D. Brown,

*Plaintiff—Appellant*,

*versus*

Tarrant County, Texas; Dee Anderson, *Individually*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:12-CV-698

Before Clement, Ho, and Duncan, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

Clarence Brown is a civilly committed sexually violent predator under Texas law. In his third appeal in this case, he challenges the district court's dismissal of his § 1983 claims against Tarrant County and its former sheriff, Dee Anderson, based on Brown's twenty-day confinement in a county jail during which he did not receive sex offender treatment. Because Anderson is entitled to qualified immunity and because Brown states no claim against the county, Brown's claims were properly dismissed. Additionally, the district court did not abuse its discretion in denying Brown's motions to amend his complaint and to appoint counsel. Accordingly, we AFFIRM.

No. 19-10594

## I

Our previous opinions in this case detail Brown's challenges to certain conditions of his civil confinement under the Texas Sexually Violent Predator Act ("SVPA" or "Act"), Tex. Health & Safety Code Ann. §§ 841.001–.153 (West 2019). *See generally Brown v. Taylor*, 911 F.3d 235, 239–42 (5th Cir. 2018) ("*Brown II*"); *Brown v. Taylor*, 829 F.3d 365, 367–68 (5th Cir. 2016) ("*Brown I*"); *see also In re Commitment of Fisher*, 164 S.W.3d 637, 645–56 (Tex. 2005) (upholding constitutionality of original SVPA). To summarize briefly: In 1998, Brown was convicted in Texas state court of one count of aggravated assault on a peace officer and three counts of sexual assault and sentenced to fifteen years' imprisonment. *Brown II*, 911 F.3d at 240. Before Brown's anticipated release in October 2011, the state initiated civil commitment proceedings against him under the SVPA. *Id.* After a jury proceeding, the trial court ordered Brown civilly committed in November 2010, and the judgment was affirmed on appeal. *Id.*

The version of the SVPA relevant here required civilly committed persons to "reside in a Texas residential facility under contract with the [Texas Office of Violent Sex Offender Management (OVSOM)]" or another approved location and to participate in OVSOM-provided "treatment and supervision."[1] The Act made the OVSOM "responsible for providing . . . treatment and supervision" and "enter[ing] into appropriate memoranda of understanding for any necessary supervised housing," while directing that

---

[1] *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 1201, § 8, sec. 841.082, 2011 Tex. Sess. Law Serv. Ch. 1201 (West) (amended 2015, 2017) (current version at Tex. Health & Safety Code Ann. § 841.082).

No. 19-10594

the case manager, an OVSOM employee or contractor, would "provide supervision" and "coordinate . . . outpatient treatment and supervision."[2]

In keeping with these requirements, Brown's November 2, 2010, commitment order provided he would "reside in supervised housing at a Texas residential facility under contract with" or approved by the Council on Sex Offender Treatment ("Council"), the OVSOM's predecessor.[3] Additionally, Brown was ordered to comply with the "treatment provided by the Council" as well as the Council's other written requirements, and Brown's case manager was ordered to "provide treatment and supervision" to Brown. The order also notified Brown he could be charged with a third-degree felony for failing to comply with the SVPA's commitment requirements.[4]

Brown alleges he was initially committed to a facility in El Paso and then transferred to a facility in Fort Worth in March 2012. During intake processing at the Fort Worth facility, Brown did not sign certain forms acknowledging and agreeing to the facility's rules. This incident led to his

---

[2] *Id.* §§ 841.007, 841.002(3), 841.083.

[3] The OVSOM assumed responsibilities from the Council in September 2011. Council on Sex Offender Treatment, Texas Health & Human Services, https://hhs.texas.gov/doing-business-hhs/licensing-credentialing-regulation/professional-licensing-certification-unit/council-sex-offender-treatment (last visited Jan. 8, 2021); *see also* Tex. Health & Safety Code Ann. § 841.083.

[4] It is unclear whether the district court took judicial notice of Brown's commitment order, but an appellate court may judicially notice certain facts, even if the district court did not. *See United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001); *see also* Fed. R. Evid. 201(d) & Note to Subdivision (f). Brown filed the commitment order as part of a supplemental document to his first amended complaint and referenced it in his second amended complaint. Defendants do not dispute its accuracy. We may therefore consider it. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

arrest, indictment for violating the terms of his commitment, and confinement at the Tarrant County Jail as a pre-trial detainee.

Brown posted bond on September 13, 2012. He was then transferred to the Cold Springs Jail, where Sheriff Dee Anderson agreed to confine Brown on receiving his commitment order, pursuant to a Memorandum of Understanding ("MOU") with the Council. The MOU stated that Tarrant County would provide "housing, meals, and other usual services to [Council] clients" in the Tarrant County Adult Detention System Work Release Program. Meanwhile, the Council would bear responsibility for "obtaining and paying for all programs it require[d] for its clients" and for supervising them outside the Tarrant County program.[5]

Although Brown was acquitted of violating his commitment terms on October 3, 2012, he remained at the Cold Springs Jail for more than a month before being transferred to a Houston facility. Brown did not receive sex offender treatment during the twenty-day period he was confined at Cold Springs between his posting bond and his acquittal. *Brown II*, 911 F.3d at 241. Treatment resumed after his acquittal. *Id.*

Brown filed a *pro se* complaint challenging the conditions of his confinement under 42 U.S.C. § 1983. *Id.* at 239. He originally sued multiple defendants in their individual and official capacities, including Sheriff Anderson and Tarrant County. *Id.* at 242. Although we previously affirmed the dismissal of claims against most of these defendants, we vacated the

---

[5] The district court considered the MOU in ruling on Brown's motion to dismiss, without objection. Brown does not object to our considering the MOU on appeal and relies on it to support his claims. Nevertheless, we note the propriety of taking judicial notice of the MOU as a "matter[] of public record directly relevant to the issue at hand," which we may consider in reviewing a Rule 12(b)(6) motion. *Funk*, 631 F.3d at 783; *see also Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020).

dismissal of Brown's claims against Anderson and the county. *Id.* at 241–42, 247.[6]

In reviewing Brown's first amended complaint, we concluded Brown had stated a due process claim against Anderson and Tarrant County. *Id.* at 244. Based on the allegation that Brown "received *no* sex offender treatment while being held after posting bond," which the state of Texas conceded,[7] we held Brown had "sufficiently alleged" that "his post-bond confinement at the Cold Springs Jail was not reasonably related to supervision and treatment," which we said represented a "cognizable due process claim." *Id.* (citing *Seling v. Young*, 531 U.S. 250, 265 (2001)). We also held Brown's claims were cognizable against Anderson because Anderson "agreed to confine him within Anderson's facility," and thus cognizable against Tarrant County because Anderson was its sheriff. *Id.* (cleaned up). However, we found Brown had not stated a claim for his post-acquittal confinement at the Cold Springs Jail because the state "resumed providing him with sex offender treatment" after his acquittal and "permitted him to leave Cold Springs Jail pursuant to his supervision level." *Id.* at 245. We also vacated the district court's denial of leave to amend Brown's first amended complaint. *Id.* at 247.

On remand, the district court granted Brown leave to file a second amended complaint, and Anderson and Tarrant County were served for the first time. Shortly thereafter, they filed a joint motion to dismiss, which the district court granted based on Anderson's entitlement to qualified immunity

---

[6] We also vacated the dismissal of Brown's retaliation claim against Greg Basham, facility director at the Fort Worth facility, *Brown II*, 911 F.3d at 247, but the district court dismissed this claim again on remand, and Brown has not appealed.

[7] Neither Anderson nor Tarrant County had been served at the time of the previous appeal. The state of Texas sought to participate in the appeal as an *amicus curiae*, but we deemed it to have appeared as a party. *Brown II*, 911 F.3d at 242 n.6. On remand, the district court dismissed Brown's claims against Texas, and Brown has not appealed.

and Brown's failure to state a municipal liability claim against Tarrant County. The district court also denied Brown's motions for appointment of counsel and for leave to file a third amended complaint. This appeal followed.

## II

We review *de novo* a Rule 12(b)(6) dismissal for failure to state a claim. *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Pro se* complaints receive a "liberal construction." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even so, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam). "Under our precedent, we may 'affirm on any ground supported by the record,' . . . so long as the argument was raised below." *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) (citations omitted).

## III

Brown's *pro se* appeal argues the district court erred by (1) holding Anderson was entitled to qualified immunity; (2) concluding Brown failed to state a municipal liability claim against Tarrant County; (3) denying Brown's motion to file a third amended complaint; and (4) denying Brown's motion to appoint counsel. We address each issue in turn.

## A

Government officials like Anderson enjoy qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time

No. 19-10594

of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). We "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *See al-Kidd*, 563 U.S. at 735 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Anderson asserts a qualified immunity defense to Brown's claim that Anderson held him in the Cold Springs Jail under conditions that violated due process. We choose to resolve Brown's claim at step two of the qualified immunity analysis,[8] finding that the asserted right was not "clearly established" at the time of Anderson's conduct.

The precise question we must answer is "whether a reasonable officer could have believed [his conduct] to be lawful, in light of clearly established law and the information the officer[] possessed." *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)) (cleaned up). "[W]e must frame the [clearly established law question] with specificity and granularity," *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019), for "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)). The plaintiff must

---

[8] This avoids any potential conflict with the law-of-the-case doctrine, which generally prevents us from considering issues decided in a previous appeal. *See USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 282 (5th Cir. 2011). Our prior opinion concluded Brown had stated a due process claim against Anderson, *Brown II*, 911 F.3d at 244, and Brown's second amended complaint pleads facts identical to those we previously examined. We note, however, that the issue of qualified immunity was not before the prior panel because the Texas Attorney General did not brief a qualified immunity defense and Anderson himself was not served until after the panel decision. Anderson claimed qualified immunity for the first time before the district court on remand, and we consider his entitlement to immunity for the first time now. *See, e.g.*, *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (explaining that "an issue that is not expressly or implicitly decided on appeal does not become part of the law of the case").

identify controlling precedent that makes the unlawfulness of the officer's conduct sufficiently clear that a reasonable officer would have understood his conduct violated that right. *Keller*, 952 F.3d at 225 (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Brown argues that when Anderson confined him in the Cold Springs Jail, it was clearly established that a person may be civilly confined only under conditions reasonably related to the purpose for which he was committed. He points out that "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling*, 531 U.S. at 265. Thus, Brown argues, it should have been clear to Anderson that confining Brown without providing sex offender treatment was unlawful.

We disagree. Brown fails to frame the question with "specificity and granularity." *Morrow*, 917 F.3d at 874–75. We must ask whether Anderson's "particular conduct," *id.*, was clearly unlawful. Brown would hold Anderson liable specifically because (1) pursuant to a MOU with the county, Anderson agreed to hold Brown, a civilly committed sex offender, in a county jail for twenty days, (2) while providing him housing, meals, and other services, but not sex offender treatment or supervision, (3) where OVSOM (and not Anderson) had exclusive responsibility under the SVPA and the confinement order to coordinate Brown's supervision and treatment. *See, e.g.*, *Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001) (defining the clearly established law question at a similar level of specificity).

Brown has not shown that the unlawfulness of this specific conduct was clearly established at the time of his confinement. First, Brown cites our prior opinion in this case; but there we decided only whether the facts alleged crossed the *Twombly* threshold for stating a due process violation. *See Brown II*, 911 F.3d at 244. We did not purport to address whether Anderson's

actions violated clearly established law. Second, Brown cites various Supreme Court and Fifth Circuit opinions recognizing due process rights of confined persons under various circumstances. *See, e.g.*, *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) (where intellectually disabled person was confined at state institution, due process required provision of "such training as an appropriate professional would consider reasonable to ensure his safety"); *Wyatt v. Aderholt*, 503 F.2d 1305, 1313–16 (5th Cir. 1974) (federal court could order state board to provide constitutionally adequate treatment for mental health patients civilly committed to state facilities).[9] But those decisions are far afield from the scenario before us. None involve the situation where the legal responsibility for providing required treatment rests not on the detaining official but on a different entity altogether.

Moreover, at the time of the challenged conduct, there was a circuit split on the underlying question of whether sexually violent or dangerous offenders have a due process right to treatment in the first place. *Compare Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (finding due process right to mental health treatment for persons civilly committed as sexually violent predators), *and Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003) (holding civilly confined pre-trial detainees charged with sex offenses are "entitled to some kind of treatment"), *with Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (finding no "fundamental due process right to sex offender treatment"). In light of that disagreement, upon which our circuit

---

[9] *See also Bell v. Wolfish*, 441 U.S. 520, 535–36, 543 (1979) (government did not violate pre-trial detainees' due process right to non-punitive conditions of confinement by imposing a "double-bunking" rule); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (state could not constitutionally commit pre-trial detainee for indefinite period based solely on alleged incapacity to stand criminal trial); *Morales v. Turman*, 562 F.2d 993, 997–98 (5th Cir. 1977) (observing that the case law "ha[d] not universally accepted a right to treatment for the mentally ill").

had not spoken, we cannot say that Anderson's failure to provide Brown with sex offender treatment—where, again, the obligation for doing so lay elsewhere—violated clearly established law.

Thus, when the question is pitched at the right level of specificity, Anderson's actions do not appear "objectively unreasonable in light of clearly established law . . . at the time the defendant acted." *Turner v. Lieutenant Driver*, 848 F.3d 678, 691 (5th Cir. 2017). The sole relevant act Brown attributes to Anderson is signing the MOU or otherwise agreeing to confine him. But, as Anderson aptly explains, he had solid reason to believe that Brown's confinement in the Cold Springs Jail was lawful under Brown's commitment order, the SVPA, and the MOU. Moreover, at the time of the confinement, the Supreme Court had "repeatedly upheld civil commitment laws" similar to Texas' SVPA against various constitutional challenges, as the district court pointed out. *See, e.g.*, *United States v. Comstock*, 560 U.S. 126, 129–130 (2010); *Kansas v. Crane*, 534 U.S. 407, 411–415 (2002); *Seling*, 531 U.S. at 266–67; *Kansas v. Hendricks*, 521 U.S. 346, 360, 368–69 (1997). And, as we noted in our 2018 opinion, the Texas Supreme Court upheld the constitutionality of the original SVPA in 2005. *Brown II*, 911 F.3d at 239 (citing *Fisher*, 164 S.W.3d at 637). Brown does not point to any authority that would have alerted Anderson to the unconstitutionality of Brown's confinement.[10] Because "it cannot be said that all reasonable sheriffs would recognize the unconstitutionality of [Anderson]'s supervisory or personal acts or omissions," *Thompson*, 245 F.3d at 461, Anderson's acts were not

---

[10] Brown alleges that he sent letters to Anderson and members of the Tarrant County Commissioners' Court in late October 2012 notifying them of his unlawful confinement in the Cold Springs Jail, but Brown had already been acquitted by that time and was receiving sex offender treatment. *Brown II*, 911 F.3d at 241.

No. 19-10594

objectively unreasonable. Anderson is therefore entitled to qualified immunity, as the district court correctly concluded.

**B**

We next address Brown's municipal liability claim against Tarrant County, which the district court dismissed for failure to state a claim.

"[M]unicipal liability under § 1983 is limited to deprivations of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature.'" *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 316–17 (5th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Such official policy may take the form of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). "Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval." *Id.* (citing *Monell*, 436 U.S. at 690–91).

To state a claim under *Monell* and its progeny, Brown had to sufficiently allege (1) that "an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality"; (2) that the allegedly unconstitutional action constitutes a "custom or policy"; and (3) that there was "a violation of constitutional rights whose moving force is the policy or custom." *Zarnow*, 614 F.3d at 166–169 (citations omitted); *see also Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012).

Brown fails the second *Monell* prong because he did not link his allegedly unconstitutional confinement to any county "policy or custom." *See Zarnow*, 614 F.3d at 171 (court need not consider "moving force" prong

because it found no "custom or policy").[11] An "official policy" may take two forms—either a "policy statement formally announced by an official policymaker" or a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (citation omitted). Brown asserts the first kind of policy, but he is mistaken.

Brown identifies the relevant policy as the MOU, which he claims facilitated his unconstitutional confinement in the Cold Springs Jail. Brown, however, does not allege the MOU itself required Tarrant County to deny him sex offender treatment, which, as we previously recognized, was the sole basis for his due process claim. *See Brown II*, 911 F.3d at 244–45. Nor does he allege the MOU was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)). Thus, Brown has not pled an official policy of denying sex offender treatment in Tarrant County jails.

Even if we charitably interpret Brown as arguing Tarrant County had a *custom* of denying sex offender treatment, he fails to plead sufficient facts to show that second basis for finding a "policy" under *Monell*. Brown identified only one instance of the county's confining a committee without treatment— his own—but "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Piotrowski*, 237 F.3d at 581 (quoting *Bennett*

---

[11] We therefore need not consider whether Brown's claim also fails the other two *Monell* prongs.

*v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)); *see also Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017) (finding three arrests over three and a half years did not establish a pattern of constitutional violations).[12]

Because Brown cannot satisfy the second *Monell* prong, the district court properly dismissed his municipal liability claim.

## C

Finally, we turn to the district court's denial of Brown's motions for leave to amend his complaint and to appoint counsel, both of which we review for abuse of discretion. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (motion for leave to amend); *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987) (request for counsel).

Brown moved to amend his second amended complaint to present claims related to the MOU. While courts should "freely give leave" to amend a complaint "when justice so requires," FED. R. CIV. P. 15(a)(2), we see no abuse of discretion in the denial of Brown's motion. As the district court explained, the MOU is a public document dating from July 2011 that Brown already had "a fair opportunity" to challenge. The court also pointed out that the proposed amendment would be futile because Brown failed to explain how the MOU might defeat Anderson's qualified immunity or

---

[12] Brown also cites the Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), arguing Tarrant County can be liable, even if Brown's case was an "isolated incident," because a policymaker's single act may establish liability. But Brown waived this argument by failing to raise it before the district court. *Zarnow*, 614 F.3d at 170 (because Zarnow "did not allege in the district court that Chief Coughlin personally committed [the alleged violation]," he waived his argument on appeal that "a single incident of unconstitutional conduct by a policymaker may impute liability to the City"). We therefore do not consider it.

No. 19-10594

support municipal liability. We therefore conclude that the district court did not abuse its discretion in denying Brown's motion to amend. *See Rosenzweig*, 332 F.3d at 864 (denying leave to amend may be justified by, *inter alia*, "undue delay . . . [or] futility of the amendment" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).[13]

Nor does Brown show the district court abused its discretion in denying his motion to appoint counsel. There is no right to appointed counsel in § 1983 cases, and a district court need appoint counsel only in "exceptional circumstances," considering "the type and complexity of the case and the abilities of the individual pursuing that case." *Cupit*, 835 F.2d at 86 (citation omitted); *see also Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007). Brown asked for appointed counsel to help him investigate his case and assist at trial because he could not afford to hire an attorney. The district court found the relevant factors weighed against granting his motion. Our review of the record confirms Brown's ability to adequately address the pertinent issues, which our previous opinion significantly narrowed, without counsel's assistance. *See Brown II*, 911 F.3d at 247. Because no exceptional circumstances merited appointed counsel, the district court did not abuse its discretion by denying Brown's motion.

**\* \* \***

The district court's judgment is AFFIRMED.

---

[13] *See also, e.g.*, *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378–79 (5th Cir. 2014) (no abuse of discretion in denying leave to amend when movant had two previous chances to amend and a third would have been futile); *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 362 (5th Cir. 2002) (no abuse of discretion where plaintiffs had "almost two years to investigate and substantiate their claims" and "the court offered [them] a [second] chance to replead" before denying them a third).