# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 5, 2020

Lyle W. Cayce
Clerk

No. 19-60287

ELIZABETH R. ALEXANDER, individually and on behalf of all others similarly situated; JOHN P. ALEXANDER, individually and on behalf of all others similarly situated; MARY SESSUMS, individually and on behalf of all others similarly situated; SANDRA GLASSMIRE, individually and on behalf of all others similarly situated; JAI GIBSON, individually and on behalf of all others similarly situated; SHARON JOSEPH, individually and on behalf of all others similarly situated; PATRICIA BROUSSARD,

     Plaintiffs - Appellants

v.

GLOBAL TEL LINK CORPORATION; CHRISTOPHER EPPS; SAM WAGGONER,

     Defendants – Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-560

Before SOUTHWICK, COSTA, and DUNCAN, Circuit Judges.

PER CURIAM:*

     Plaintiff-appellants are inmates of the Mississippi Department of Corrections and their family members (collectively, "the inmates"). They allege

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

they were charged illegally inflated fees to use inmate telephone services administered by defendant-appellee Global Tel Link. Their lawsuit follows on the heels of the criminal convictions of defendant-appellees Christopher Epps and Sam Waggoner, who orchestrated a kickback scheme to give GTL a monopoly over the MDOC's prison telephone services, which, the inmates allege, GTL used to inflate telephone fees illegally.

The district court dismissed the inmates' fourth amended complaint, holding in relevant part that their racketeering claims were pleaded insufficiently to overcome the so-called "filed-rate doctrine," which "bars judicial recourse against a regulated entity" based on a claim that a government-approved rate of service, or "filed rate," is "too high, unfair or unlawful." *Tex. Comm'l Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2005). We affirm.

## I.

We take the operative facts from the fourth amended complaint, viewed in the light most favorable to the inmates. *See Childers v. Iglesias*, 848 F.3d 412, 413 (5th Cir. 2017).

This case involves a bribery scheme effected by Christopher Epps, the former head of the Mississippi Department of Corrections ("MDOC"), and Sam Waggoner, a former consultant to defendant-appellee Global Tel Link ("GTL"). In 2005, the MDOC contracted with GTL to manage inmate phone services. The contract has been renewed several times with no competing bids. The complaint alleges that in exchange for payments from Waggoner, Epps "turned a blind eye" to GTL's imposition of excessive, illegal fees on the inmates,[1] allowing GTL to "inflat[e] its profits" at the inmates' expense. This was the

---

[1] As noted above, plaintiff-appellants include individuals who called inmates from outside prison. Where appropriate, the term "inmates" includes those individuals, too.

No. 19-60287

result of an agreement Waggoner had made with Epps to pay him kickbacks to ensure GTL kept the phone-service contract. Waggoner's payments to Epps were "as much as $3,400 per month" and totaled "over $300,000.00." In 2015, Epps and Waggoner pleaded guilty in federal court for their roles in the scheme.

In 2017, the inmates brought this putative class-action suit against Waggoner, Epps, GTL, and other since-dismissed parties, alleging racketeering, among other things. The complaint was amended twice before GTL moved to dismiss for failure to state a claim. The district court granted the motion, holding the inmates had failed to "show how the fees actually charged were inconsistent with" fees approved by the MDOC and tariffs approved by the Mississippi Public Service Commission ("PSC"). The dismissal was without prejudice. The inmates filed a third amended complaint, which "identifie[d] various fees that concededly are present in the tariffs governing the rates and fees GTL may charge" and alleged they "were charged these fees in a manner not approved by the tariffs." But the third amended complaint failed again to "identif[y] . . . a single instance in which one plaintiff was charged a fee in a manner not approved by the PSC." The district court again dismissed without prejudice and granted leave to file a final complaint, "encourag[ing]" the inmates "to avoid the pitfalls of shotgun pleadings."

The inmates then filed the now-operative fourth amended complaint, bringing several causes of action.[2] The complaint details a total of seven assessments it claims GTL misapplied. It admits that six of these assessments

---

[2] On appeal, the inmates develop arguments only as to Counts I and II, which allege violations of the Racketeer Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. They have thus waived any argument that the district court erred in dismissing their other five causes of action.

were authorized by a PSC tariff but alleges GTL misapplied the assessments and therefore exceeded the tariff.[3] As to the seventh assessment,[4] the complaint alleges only that it was "outside the scope of any rate structure or tariff schedule approved by MDOC or" the PSC. As the district court noted, the complaint fails to "identify a single instance in which one plaintiff was charged a fee in a manner not approved by the PSC." Instead, the complaint alleges generally that the fees were assessed against "*every* customer" or on "*every* call," as the case may be. In other words, the complaint does not allege that GTL imposed an unauthorized fee on any specific date or with regard to any specific inmate or any specific call. The complaint alleges "GTL never provided its customers with detailed bills" and "never provided its customers with any

---

[3] The six tariff-authorized assessments are:

- An "AdvancePay" fee which applies to customers from whom GTL "determines an advance payment is necessary." The complaint alleges that in reality, GTL imposed AdvancePay fees "on *every* customer."

- A "Single Bill Fee," which was to be applied "only once per billing period, regardless of the number of calls accepted." The complaint alleges GTL "impos[ed] this fee on *every* call."

- A fee for "Prepaid Debit Accounts." The complaint alleges GLT "impos[ed] a significantly higher rate structure" with regard to this fee.

- A "Regulatory and Carrier Cost Recovery Fee," which is authorized as "a flat fee once per month or as a percentage of an intrastate call." The complaint alleges GTL imposed this fee "on a per-call basis, rather than monthly."

- A "Wireless Termination Surcharge," which GTL "reserve[d] the right" to impose on calls made to cell phones. The complaint alleges that "[i]n practice, GTL did not 'reserve the right'—it automatically and arbitrarily imposed this outrageous and excessive fee on every call" to a cell phone.

- A "Validation Surcharge," which, the tariff states, "will be applied to the base rate of all calls." The complaint alleges only that GTL imposed the surcharge "outside the scope of its authorized tariff."

[4] The complaint alleges "GTL arbitrarily limits inmate calls to 15-minute intervals, after which callers must pay *additional* per-call fees, surcharges and/or ancillary costs for additional time." These actions, the complaint alleges, "were outside the scope of any rate structure or tariff schedule."

No. 19-60287

itemization of any bill." But it contains no allegations regarding any efforts to obtain itemized bills or any other information regarding GTL's rates. As the district court observed, "[a]t no point have the Plaintiffs suggested that they even attempted to acquire" this information.

The district court dismissed the fourth amended complaint, finding again that the inmates had failed to plead specific facts sufficient to overcome the filed-rate doctrine. It also rejected the inmates' argument that they could not be expected to provide such detailed allegations because GTL failed to give its customers itemized bills, noting that none of the complaints had detailed any efforts taken to secure itemized bills or otherwise determine which fees were being applied to which calls or inmates. Having given the inmates two previous opportunities to correct these deficiencies, the district court dismissed the fourth amended complaint with prejudice. The inmates timely appealed.

## II.

We review the grant of a motion to dismiss de novo. *Childers*, 848 F.3d at 413). We accept all well-pleaded facts as true and "view those facts in the light most favorable to the plaintiff." *Id.* We do not accept as true "conclusory statements" or "naked assertions devoid of further factual enhancement." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (cleaned up).

We will affirm the dismissal if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the complaint alleges facts sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint

5

No. 19-60287

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.

RICO provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of" RICO's substantive provisions. 18 U.S.C. § 1964(c); *see id.* § 1962 (enumerating substantive violations). To recover under § 1964(c), a plaintiff must prove not only all elements of a substantive RICO violation but also that "he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The plaintiff must also demonstrate that the substantive violation proximately caused his injury. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Here, the inmates argue they have suffered an injury "in the form of excessive and illegal charges paid for" GTL's telephone fees. *Taffet v. South Co.*, 967 F.2d 1483, 1487 (11th Cir. 1992) (en banc). This argument "rests on the assumption that [the inmates] enjoy a legal right to have been charged a lower rate than they actually were charged." *Id.* at 1488.

Under the so-called "filed-rate doctrine," however, a ratepayer has no right to a rate lower than one approved by a governing regulatory agency. The filed-rate doctrine "bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." *Tex. Comm'l Energy v. TXU Energy, Inc.* [*TCE*], 413 F.3d 503, 507 (5th Cir. 2005) (citing *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409 (1986)). "Simply stated, the doctrine holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Id.* at 508 (quoting

*Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)). The doctrine stems from judicial reluctance to revisit agencies' determinations of what rates are reasonable or unreasonable. *See Montana-Dakota Utilities Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) ("[A ratepayer] can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the [agency], and not even a court can authorize commerce in the commodity on other terms."). The doctrine applies regardless of "the culpability of the defendant's conduct or the possibility of inequitable results." *Marcus v. AT&T Corp.*, 138 F.3d 46, 59 (2d Cir. 1998); *see also Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 128 (1990) ("Despite the harsh effects of the filed rate doctrine, we have consistently adhered to it." (collecting cases)).

While the filed-rate doctrine originated with federally approved rates, "[c]ourts have uniformly held . . . that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies." *TCE*, 413 F.3d at 509 (quoting *Wegoland*, 27 F.3d at 20, and citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 494 (8th Cir. 1992), *Taffet*, 967 F.2d 1483, and *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647 (E.D. Tex. 1999)) (second alteration in original). Similarly, while the doctrine originated in the antitrust context, every circuit court to consider the question has concluded the doctrine applies to lawsuits brought under § 1964(c). *See, e.g., Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1226 & n.4 (9th Cir. 2007); *Wegoland*, 27 F.3d at 20; *Taffet*, 967 F.2d 1483; *H.J. Inc.*, 954 F.2d at 494.[5]

As the district court noted, we recently applied the filed-rate doctrine to telephone services, affirming dismissal of a complaint that alleged ratepayers

---

[5] We have not had occasion to decide whether the filed-rate doctrine extends to § 1964(c), but the inmates do not argue the doctrine is inapplicable here. We have, however, cited *Wegoland* and *Taffet* with approval. *See TCE*, 413 F.3d at 509. With no contrary argument before us, we assume without deciding that the doctrine applies to § 1964(c).

were charged certain fees "not found in any applicable" agency-approved tariff. *See Atlas Trading Conglomerate Inc. v. AT&T Inc.*, 714 F. App'x 318, 322 (5th Cir. 2017), *as revised* (Oct. 19, 2017) (per curiam). We "accept[ed] as true" the allegation that the charges were not found in the tariffs but held this did not constitute "a plausible allegation that the defendants [had] charged [the ratepayer] different rates from those on file with the FCC." *Id.*

Similarly, here, the fourth amended complaint fails to plead specific facts sufficient to overcome the filed-rate doctrine. As discussed above, the complaint admits that of the seven challenged assessments, six were authorized by a PSC-approved tariff. As to the seventh assessment, the complaint merely alleges the assessment is "not found in any applicable" agency-approved tariff. *Cf. id.* The complaint does allege that, in practice, GTL exceeded the tariff-approved rates, but it does so in the broadest of terms. It claims, for example, that GTL imposed one assessment "on *every* customer."[6] But, as the district court noted, the complaint does not "identify a single instance in which one plaintiff was charged a fee" contrary to the tariff or any other approved rate. In other words, the complaint fails to allege that GTL imposed any specific, unauthorized fee on any specific date or with regard to any specific inmate or any specific call. We agree with the district court that

---

[6] That allegation was made as to the "AdvancePay" fee. The complaint similarly alleges GTL imposed the Single Bill Fee "on *every* call." It alleges GLT "impos[ed] a significantly higher rate structure" with regard to "Prepaid Debit Accounts" but does not explain that structure. Similarly, the complaint alleges GTL imposed the Validation Surcharge "outside the scope of its authorized tariff" without explaining how it exceeds that scope. It alleges GTL imposed the Regulatory and Carrier Cost Recovery Fee "on a per-call basis, rather than monthly," but does not allege the actual charges were not "a percentage of an intrastate call," as the tariff authorizes. It alleges GTL failed to "reserve [its] right" to impose the Wireless Termination Surcharge but admits that under the tariff, GTL *had* the right to impose the surcharge. Finally, the complaint alleges GTL's "costs for additional time" exceeding fifteen minutes "were outside the scope of any rate structure or tariff schedule." But it fails to identify a specific instance of the charge being applied.

these allegations amount to nothing more than conclusory statements of fact, which we will not accept as true. *See Twombly*, 556 U.S. at 570.

The bulk of the inmates' argument on appeal is that the assessments were the products of bribery and fraud. But the filed-rate doctrine ignores "the culpability of the defendant's conduct." *Marcus*, 138 F.3d at 59 (citing *Square D*, 476 U.S. at 424). In *Square D*, for example, the Supreme Court affirmed dismissal of antitrust claims even though it was alleged that the defendants had engaged in rate-fixing. 476 U.S. at 410. Similarly in *TCE*, we applied to doctrine to allegations that a power supplier engaged in "anti-competitive bids and market manipulation." 413 F.3d at 507. The inmates give no reason to think Epps' and Waggoner's conduct should constitute an exception to this rule.[7]

The inmates also argue they should be excused from usual pleading standards because "GTL exclusively controls the billing and collections records at issue in the case, and they are not public records." In other contexts, we have taken into account a plaintiff's "limited access to crucial information" in deciding whether to affirm a Rule 12(b)(6) dismissal. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 731 (5th Cir. 2018) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)). But we have "emphasiz[ed]" that in those contexts, the plaintiffs alleged they were "unable to obtain plan documents even after good-faith efforts to do so." *Id.* at 729. Here, the fourth amended complaint contains no

---

[7] The inmates similarly distinguish *Atlas* on the ground that it "did not involve or allege a *criminal conspiracy* in which the defendants willfully and intentionally hid their criminal acts." This, too, ignores the filed-rate doctrine's "harsh" nature. *Maislin Indus.*, 497 U.S. at 128.

allegations regarding any efforts to obtain specific information regarding GTL's billing practices.[8]

\* \* \*

In sum, the district court correctly decided that the fourth amended complaint fails to plead adequately that the inmates were charged in excess of government-approved rates. The inmates' allegations are threadbare and lack the specificity required to overcome dismissal. Accordingly, the complaint fails to demonstrate "a legal right to have been charged a lower rate than [the inmates] actually were charged." *Taffet*, 967 F.2d at 1488. Because § 1964(c) requires a plaintiff to demonstrate that "he has been injured in his business or property by the conduct constituting the violation," *Sedima*, 473 U.S. at 496, the complaint fails to state a civil RICO claim. We AFFIRM.

---

[8] The inmates do not argue the district court erred by dismissing the fourth amended complaint with instead of without prejudice. Even if they did, we would affirm that decision. We review the decision whether to dismiss with or without prejudice for abuse of discretion. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 215 n.34 (5th Cir. 2009) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). The district court allowed the inmates to file four amended complaints, two of them after it had noted the deficiency that led to the final dismissal. *Cf. Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803, 808 (5th Cir. 2020) ("[T]he district court allowed Neutron Depot to file three amended complaints. It was not an abuse of discretion for the district court to refuse Neutron Depot a 'fourth bite at the apple.'" (quoting *Schiller*, 342 F.3d at 566) (cleaned up)). Here, the district court did not abuse its discretion by refusing the inmates a fifth "bite at the apple." *Id.*